# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

CIMONE WATSON,

*Plaintiff,*

v.

CLARITY SERVICES, INC.,

*Defendant*.

Case Number:

JURY TRIAL DEMANDED

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, **Cimone Watson** ("**Ms. Watson**"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendant, **Clarity Services, Inc.** ("**Clarity**"), stating as follows:

## PRELIMINARY STATEMENT

1. This is an action brought by Ms. Watson against Clarity for violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et seq.* ("**FCRA**").

## JURISDICTION AND VENUE

2. Subject matter jurisdiction arises under the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331.

3. The Defendant is subject to the provisions of the FCRA and to the jurisdiction of this Court pursuant to Fed. R. Civ. P. 4(k) and § 48.193, Fla. Stat.

Page **1** of **27**

4. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(2), because the acts complained of were committed and / or caused by Clarity within Polk County, Florida, which is in the Middle District of Florida.

## PARTIES

### Ms. Watson

5. **Ms. Watson** is a natural person residing in Polk City, Polk County, Florida.

6. Ms. Watson is a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c).

7. Ms. Watson was previously known as Cimone Davis.

### Clarity

8. **Clarity** is a Delaware corporation with a principal business address of 475 Anton Blvd., Costa Mesa, CA 92626.

9. Clarity is registered to conduct business in the State of Florida, where its Registered Agent is **CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324**.

10. Clarity is a nationwide *Consumer Reporting Agency* ("CRA"), within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that it, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and uses various means of interstate commerce for the purpose of preparing or furnishing

consumer reports, specifically including mail, internet, and/or telephone communications.

## FACTUAL ALLEGATIONS

### Clarity Produces Clearly Erroneous Reports on Plaintiff

11. In or prior to June 2021, Clarity began maintaining a credit file on Ms. Watson. **SEE PLAINTIFF'S EXHIBIT A.**

12. Clarity, a CRA that predominantly serves the needs of online lenders making short-term loans, programs its systems to acquire and report as much information as possible, with little regard to the quality or accuracy of the data.

13. For example, Clarity erroneously reported Ms. Watson's name as "CIMONE WATSON JR." However, Ms. Watson has never used the generational suffix "Junior" in her name, nor is she a Junior, nor has she ever applied for credit using this name. *Id.*

14. Moreover, it is exceedingly rare for women to use a generational suffix like "JR."

15. Clarity also incorporated personal information belonging to some other unknown individual with a date of birth in 1975 (about six years before Ms. Watson was born) into Ms. Watson's Clarity report. *Id.*

16. Other data belonging to the first unknown person born in 1975 was incorporated by Clarity into Ms. Watson's file, including credit information about a checking account maintained at Bank of America, as well as reporting indicating employment at "GANDOLFO ENTERPRISE," a made-up, fictitious employer

Page **3** of **27**

address of "123 MAIN STREET LAKELAND FL," an occupation of "GANDOLFO ENTERPRISE," and a Florida driver's license number ending in 9858. *Id.*

17.     Further, Clarity incorporated data belonging to a *second* unknown person born in 1987 into Ms. Watson's credit file, including income, pay frequency, occupation, and length of time of employment. All of this data apparently belongs to this unknown second person. *Id.*

18.     Clarity's file on Ms. Watson is an example of a *mixed file*.

19.     A mixed file is a credit file that contains information concerning two or more people rather than the one person about whom it should relate.

20.     The mixed file resulted from Clarity's reckless and improper methods by which it connects data reported to it by various furnishers and incorporates that data into its files.

21.     In an aggressive attempt to match every record reported, Clarity's automated systems often erroneously match information to a consumer's credit file with minimal commonalities.

22.     These erroneous matches occur even when the data from Clarity's furnishers of information contains substantially different identifying information from that of the actual consumer.

23.     Clarity knows that its automated systems erroneously match reported information to the wrong consumers' credit file, often with minimal commonalities.

24.     Despite such knowledge, Clarity has declined to correct its systems, which often appear to match a consumer's data with the information in its files based on a single data point instead of utilizing all of the information provided to it.

25.     As a CRA, Clarity has a legal obligation to use reasonable procedures to assure the maximum possible accuracy of its consumer reports. 15 U.S.C. § 1581e(b).

26.     Despite its obligation, on February 3, 2026, Clarity sold a consumer report regarding Ms. Watson to Plain Green in connection with an application for a personal loan apparently initiated by another unknown consumer, presumably the individual born in 1987 whose data was mixed with Ms. Watson's.

27.     Additionally, on September 7, 2025, Clarity sold a consumer report regarding Ms. Watson to Credit Ninja in connection with an application for a personal loan apparently initiated by an unknown consumer, presumably the individual born in 1975 whose data was mixed with Ms. Watson's.

28.     Clarity also sold consumer reports to a large number of consumer lenders indicating that Ms. Watson was born in 1975 and 1987, that she worked for an employer called "GANDOLFO ENTERPRISE" at the fictitious address of "123 MAIN STREET LAKELAND FL," and that she had at least three Florida driver's licenses.

29.     At no point did Ms. Watson work for "GANDOLFO ENTERPRISE," which records from the Florida Secretary of State indicate ceased operations in 2001.

30.   Each of these lenders, in connection with evaluating Ms. Watson's credit applications, obtained a copy of Ms. Watson's Clarity credit report containing obviously false information about Ms. Watson.

31.   As a result, Ms. Watson was frequently denied credit or offered credit on less-favorable terms.

32.   Clarity frequently sells reports about consumers to online lenders who requested reports on unrelated individuals and has been sued many times in the past for these actions. *See, e.g.*, *Alexander Gil vs. Clarity Services, Inc.*, case 8:23-cv-00845, M.D. Fla., April 18, 2023 (sale of report of a Florida consumer to online lender requesting report of unrelated Nevada resident); *Donna Ford vs. Clarity Services, Inc.*, case number 4:22-cv-00301-MW-MAF, N.D. Fla., July 2022 (sale of report of a Florida consumer to online lender requesting report of unrelated male Oregon resident as well as an unrelated male Florida resident).

33.   Beyond the systemic problems Clarity's automated systems routinely encounter in associating different consumers with each other, Clarity programs its systems to acquire and report as much information as possible, with little regard to the quality of the data, or if the data could even possibly be true.

34.   For example, Clarity incorporated reporting indicating she had lived at her home for "0 months" as recently on February 3, 2026. **SEE PLAINTIFF'S EXHIBIT A.**

35.     Yet on that very same day, February 3, 2026, Clarity reported Ms. Watson had resided at her home for "12 months" – information reported less than 30 seconds before the "0 Months" history was reported. *Id.*

36.     Clarity also incorporated data indicating Ms. Watson works at "SOUTH AUSTIN SURGERY" as a "SECURITY OFFICER," neither of which are true. *Id.*

37.     No business called "South Austin Surgery" appears to exist in Hillsborough County or the surrounding areas, and the closest match is in Austin, Texas. *Id.*

38.     The above employer and occupation thus likely belong to another individual, not Ms. Watson.

39.     Clarity further incorporated reports listing Ms. Watson's occupation as "GANDOLFO ENTERPRISE," which is not an occupation but a business, and one that has been shuttered for the last two decades. *Id.*

40.     Clarity incorporated reports which stated that Ms. Watson's net monthly income varied drastically, even within the same month.

| Net Monthly Income | First Reported (Date/Time/Tracking #) | Last Reported (Date/Time/Tracking #) | # of Times Reported |
|---|---|---|---|
| $1,500.00 | 4/9/2023  9:48:51 pm EDT 2wgsmq1zjz | 4/9/2023  9:48:51 pm EDT 2wgsmq1zjz | 1 |
| $1,800.00 | 4/11/2025  2:06:51 pm EDT fbq39c0gm8 | 4/11/2025  2:06:51 pm EDT fbq39c0gm8 | 1 |
| $4,000.00 | 5/18/2025  8:01:32 pm EDT wbk1nt43hn | 5/18/2025  8:01:32 pm EDT wbk1nt43hn | 1 |
| $4,868.00 | 7/21/2021  10:36:15 pm EDT d6mzvzczcd | 7/21/2021  10:36:15 pm EDT d6mzvzczcd | 1 |
| $7,333.00 | 8/26/2025  6:46:49 am EDT ezcvdcbsht | 2/7/2026  10:18:12 pm EST 245pagebs0 | 3 |
| $9,000.00 | 5/7/2025  11:14:47 am EDT hwwyqmeqr3 | 5/7/2025  4:30:30 pm EDT q6fgxdxe2f | 2 |

41.    Clarity also incorporated reports with ever-changing pay frequencies.

| Pay Frequency | First Reported (Date/Time/Tracking #) | Last Reported (Date/Time/Tracking #) | # of Times Reported |
|---|---|---|---|
| BIWEEKLY | 1/18/2023 12:45:27 pm EST j2x1w3m6dp | 5/18/2025 8:01:32 pm EDT wbk1nt43hn | 13 |
| JUST BIWEEKLY | 5/7/2025 11:14:47 am EDT hwwyqmeqr3 | 5/7/2025 4:30:30 pm EDT q6fgxdxe2f | 2 |
| MONTHLY | 2/3/2026 4:32:28 pm EST 1ycftg196p | 2/3/2026 4:32:32 pm EST r9a3ypfrmq | 3 |
| NOTHING | 8/26/2025 6:46:49 am EDT ezcvdcbsht | 8/26/2025 6:46:49 am EDT ezcvdcbsht | 1 |
| SEMIMONTHLY | 7/21/2021 10:36:15 pm EDT d6mzvzczcd | 9/7/2025 2:58:26 pm EDT 6wejws2g79 | 4 |
| WEEKLY | 2/3/2026 4:32:03 pm EST fe146jw7ch | 2/3/2026 4:32:03 pm EST fe146jw7ch | 1 |

42.    Clarity claimed multiple different times that Ms. Watson has been paid "BIWEEKLY," "JUST BIWEEKLY," "MONTHLY," "NOTHING," "SEMIMONTHLY," and "WEEKLY," during timeframes that obviously overlap.

43.    However, at no point was Ms. Watson paid monthly.

44.    Moreover, "BIWEEKLY" and "JUST BIWEEKLY" are clearly the same value, but Clarity lists them as if they are individual and distinct.

45.    Clarity's automated "risk score" heavily considers the number of reported changes to a consumer's pay frequency. Thus, Clarity's failure to catch the obvious – that "BIWEEKLY" and "JUST BIWEEKLY" are the same thing – created an artificially low risk score for Ms. Watson, which was sold to potential creditors.

46.    Further, as Clarity's credit scoring system heavily considers a consumer's income stability, the presence of information suggesting Ms. Watson was paid only monthly or was paid nothing is heavily detrimental to her, since most creditors obtaining her report from Clarity require payment on a bi-weekly schedule.

47.     Clarity incorporated false reporting indicating Ms. Watson's pay frequency was "NOTHING" although simultaneously to this, it incorporated reporting indicating she had a Net Monthly Income of $7,333 per month. *Id.*

48.     Clarity thus knew that this information was, on its face, inaccurate, but it incorporated it into her credit file, unquestioned.

49.     Wild fluctuations in income – *e.g.*, reporting in Clarity's credit file on Ms. Watson indicating her income ranged from $1,800 per month to $9,000 per month within a 30-day period – is virtually always considered to be a marker of financial instability and viewed as negative by both lenders as well as automated credit score computations. *Id.*

50.     Clarity also incorporated inaccurate data concerning whether Ms. Watson is paid by direct deposit. On July 21, 2021 at 10:36:15pm, Clarity reported Ms. Watson *did not* receive her pay via direct deposit, which is false. Clarity should have known this since, simultaneously, on July 21, 2021, at 10:36:15pm, Clarity also reported an active bank account and routing number, suggesting Ms. Watson did, in fact, receive payment via direct deposit. *Id*.

51.     The contradictory pay method and banking information was furnished by Progressive Leasing, a predatory, subprime lender which makes ultra-high-interest loans under the guise of rent-to-own agreements.

52.     The majority of lenders to whom Clarity sells reports thoroughly examine a consumer's employment history and income data to verify the consumer has a

Page **9** of **27**

history of reliable employment and stable income to ensure the consumer is able to repay any funds the lender advances.

53. Consequently, Clarity's inclusion of demonstrably false information about Ms. Watson's income and employment had a significant negative impact on Ms. Watson's ability to obtain new credit.

54. Clarity also reported that Ms. Watson has *three* Florida driver's licenses even though she does not, nor is it even possible for a person to have three different Florida driver's licenses. ***Id.***

55. Compounding the issue, Clarity redacted all but the last four digits of the three driver's licenses Ms. Watson supposedly has in its credit disclosure to Ms. Watson, which was supposed to contain the full, unredacted contents of her file. ***Id.***

56. Clarity also redacted the account numbers of her credit accounts in Clarity's file on Ms. Watson, even though Clarity includes the full account numbers in reports it sells to creditors and potential creditors. ***Id.***

57. Nothing in the FCRA allowed Clarity to redact this information, but it did so anyway.

58. Records from Clarity show it sold over two dozen reports regarding Ms. Watson in the past five years.

59. Each of these reports contained false and preposterous information about Ms. Watson's employment history, housing status, income, and more.

60.     The FCRA is clear in its requirement that Clarity, as a CRA, is required to prepare accurate reports:

> **Accuracy of Report**.    Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. *15 U.S.C. §1681e(b).*

61.     Clarity was required to follow reasonable procedures to assure maximum possible accuracy of the information concerning Ms. Watson.

62.     Clarity was thus aware that when it sold reports about Ms. Watson in the last five years that, under a best-case scenario, it was selling data and other information it knew it had gathered without regard to accuracy or completeness.

### Clarity Fails to Meaningfully Disclose Legally Required Information

63.     On or about April 1, 2026, Ms. Watson requested a copy of her consumer credit disclosure from Clarity.

64.     Upon receipt of Ms. Watson's request, Clarity was required to "clearly and accurately" disclose all information in Ms. Watson's file at the time of her request, including the identification of *each* person, including an end user if the report was obtained by a reseller, who obtains a consumer report from Clarity within the prior year *for any purpose.* See 15 U.S.C. § 1681g(a)(3)(A)(ii).

65.     "Identification" is defined in the FCRA as "the name of the person, or if applicable, the trade name (written in full) under which such person conducts business." 15 U.S.C. § 1681g(a)(3)(B)(i).

66.     Frequently, Clarity fails to fulfill its legal obligations to disclose this data, often disclosing an incomprehensible string of characters which virtually no one could comprehend.

67.     For example, Clarity's disclosure shows this inquiry made on February 3, 2026:

| 2/3/2026 4:32:32 pm EST r9a3ypfrmq | Credit Application | Online Line of Credit | CCB/TLS/MK Analytics/Propel |
|---|---|---|---|

68.     In this instance, Clarity disclosed what appears to be at least four end-users within an individual inquiry; moreover, "CCB / TLS / MK Analytics / Propel" is not the name(s) of any creditor readily ascertainable to a reasonable person. This labeling does not clearly identify what entity or entities made the inquiry as required by law.

69.     The failure of a person to provide accurate and truthful information as required by law creates an injury-in-fact, thus creating standing pursuant to Article III. *See e.g., Havens Realty Corp v. Coleman,* 455 U.S. 363 (1982)(holding "alleged injury to (plaintiff's) statutorily created right to truthful housing information" was a cognizable injury in and of itself, regardless of whether the plaintiff actually hoped to reside in the defendant's housing complex; therefore "the Art. III requirement of injury in fact [was] satisfied.").

70.     Since " CCB / TLS / MK Analytics / Propel" is not the name(s) of any creditor readily ascertainable to a reasonable person, Ms. Watson cannot identify the source of the inaccurate data and effectively dispute it at the source.

71.     Further, the lack of accurate, full disclosure of who had obtained her credit report caused Ms. Watson great frustration and emotional distress and made her concerned she was the victim of fraud or identity theft.

72.     Clarity has been failing to provide the legally-required trade names of persons obtaining credit reports, written in full, for at least 10 years, and often substitutes impossible-to-understand shorthand instead.

73.     Clarity thus failed to use reasonable procedures when preparing the credit reports sold to each lender.

74.     Clarity also failed to use reasonable procedures when preparing a consumer disclosure to provide Ms. Watson upon her request.

75.     As a result of the Defendant's actions, Ms. Watson has suffered damages, including wasted time trying to figure out what the information in her Clarity file means and how it got there, lost financial opportunities, loss of credit, lower credit scores, significant emotional distress and aggravation, and damage to her reputation.

76.     Ms. Watson has hired the undersigned law firm to represent her in this matter and has assigned the firm her right to fees and costs.

## COUNT I
## CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)

77.     Ms. Watson adopts and incorporates paragraphs 1 – 76 as if fully stated herein.

78.     Clarity willfully violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of consumer reports sold

regarding Ms. Watson, as reasonable procedures would not have resulted in Clarity's inclusion of information concerning multiple other individuals into Ms. Watson's reports, or the inclusion of information regarding false dates of birth, checking account information, occupational information, etc.

79.     Clarity's conduct was willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to provide reports with maximum possible accuracy.

80.     Clarity's policies could reasonably be foreseen to cause harm to Ms. Watson.

81.     Clarity is thus liable to Ms. Watson, pursuant to 15 U.S.C. § 1681n, for the greater of Ms. Watson's actual damages or statutory damages of up to $1,000 for each occurrence, as well as for punitive damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Ms. Watson respectfully requests this Honorable Court enter judgment against Clarity for:

a. The greater of Ms. Watson's actual damages or statutory damages of $1,000 per violation, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3);

c. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2); and,

d. Such other relief that this Court deems just and proper.

## COUNT II
## CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA,
## 15 U.S.C. § 1681e(b)
### (Pled in the Alternative to Count I)

82.     Ms. Watson adopts and incorporates paragraphs 1 - 76 as if fully stated herein, and pleads this count strictly in the alternative to Count I.

83.     Clarity owed Ms. Watson a legal duty to utilize reasonable procedures to assure the maximum possible accuracy of its consumer reports regarding Ms. Watson.

84.     Clarity breached its duty when it sold numerous consumer reports incorporating information concerning other individuals into Ms. Watson's report and which also contained erroneous information about Ms. Watson's date of birth, checking account information, occupational information, and more.

85.     Clarity's breach amounts to a negligent violation of **15 U.S.C. § 1681e(b)**, and Ms. Watson is entitled to her actual damages, attorneys' fees, and costs, pursuant to 15 U.S.C. § 1681o.

**WHEREFORE,** Ms. Watson respectfully requests this Honorable Court enter judgment against Clarity for:

a.  Ms. Watson's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2);

c.  Such other relief that this Court deems just and proper.

## COUNT III
## CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(1)

86.     Ms. Watson adopts and incorporates Paragraphs 1 – 76 as if fully restated herein.

87.    Clarity violated **15 U.S.C. § 1681g(a)(1)** when it failed to clearly and accurately disclose all the information it had in its file by providing Ms. Watson with a redacted version of her consumer disclosure, including information which became meaningless when redacted, and which was not redacted when sold to Ms. Watson's creditors.

88.    Clarity has been notified through litigation that its disclosures to consumers fail to properly disclose this information.

89.    Clarity's conduct was thus willful and intentional, or, alternatively, was performed with reckless disregard for its duties under the FCRA to provide clear and accurate disclosures.

90.    As a result of its conduct, Clarity is liable to Ms. Watson pursuant to the FCRA for the greater of Ms. Watson's actual damages or statutory damages of up to $1,000 for *each occurrence*, punitive damages, reasonable attorneys' fees, and costs, per 15 U.S.C. § 1681n.

**WHEREFORE**, Ms. Watson respectfully requests this Honorable Court enter judgment against Clarity for:

a.  The greater of Ms. Watson's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3);

c.  Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2); and,

d.  Such other relief that this Court deems just and proper.

## COUNT IV
## CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA,
### 15 U.S.C. § 1681g(a)(1)
**(Pled in the alternative to Count III)**

91.   Ms. Watson adopts and incorporates paragraphs 1 - 76 as if fully stated herein, and pleads this count strictly in the alternative to Count III.

92.   Clarity owed Ms. Watson a legal duty to accurately disclose all the information in her credit file upon her request.

93.    Clarity breached this duty when it only provided Ms. Watson with a redacted version of her consumer disclosure, including information which became meaningless when redacted, and which was not redacted when sold to Ms. Watson's creditors.

94.   Clarity's breach amounts to a negligent violation of **15 U.S.C. § 1681g(a)(1)**, and Ms. Watson is entitled to her actual damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1681o.

**WHEREFORE**, Ms. Watson respectfully requests this Honorable Court enter judgment against Clarity for:

a.   Ms. Watson's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2);

c.   Such other relief that this Court deems just and proper.

## COUNT V
## CLARITY'S WILLFUL VIOLATION OF THE FCRA,
## 15 U.S.C. § 1681g(a)(3)(A)(ii)

95.     Ms. Watson adropts and incorporates paragraphs 1 – 76 as if fully restated herein.

96.     Clarity violated **15 U.S.C. § 1681g(a)(3)(A)(ii)** when it failed to identify each person, including the end-user, when applicable, that procured Ms. Watson's consumer report during the one-year period preceding the date upon which she made the request. Clarity disclosed inquiries with false, made-up, and/or non-existent information, and/or utilized incomprehensible shorthand, falling far short of being "written in full" as required.

97.     Clarity is aware that its consumer disclosures fail to properly identify end-users via multiple consumer lawsuits complaining of the same.

98.     Clarity's conduct was willful, intentional, and exhibited a reckless indifference to its duties to provide clear and accurate disclosures pursuant to the FCRA.

99.     As a result of its conduct, Clarity is liable to Ms. Watson pursuant to the FCRA for the greater of Ms. Watson's actual damages or statutory damages of up to $1,000 for *each occurrence*, punitive damages, reasonable attorneys' fees, and costs, per 15 U.S.C. § 1681n.

**WHEREFORE**, Ms. Watson respectfully requests this Honorable Court enter judgment against Clarity for:

a. The greater of Ms. Watson's actual damages or statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3);

c. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2); and,

d. Such other relief this Court deems just and proper under the circumstances.

**COUNT VI**
**CLARITY'S NEGLIGENT VIOLATION OF THE FCRA,**
**15 U.S.C. § 1681g(a)(3)(A)(ii)**
**(Pled in the alternative to Count V)**

100.   Ms. Watson adopts and incorporates paragraphs 1 - 76 as if fully stated herein, and pleads this count strictly in the alternative to Count V.

101.   Clarity owed Ms. Watson a legal duty to identify each person that procured Ms. Watson's consumer report during the one-year period preceding the date on which the request was made.

102.   Clarity breached this duty when it only provided Ms. Watson with incomprehensible data which did not clearly identify the persons or entities who procured her consumer report.

103.   Clarity's breach amounts to a negligent violation of **15 U.S.C. § 1681g(a)(3)(A)(ii)**, and Ms. Watson is entitled to actual damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1681o.

**WHEREFORE**, Ms. Watson respectfully requests this Honorable Court enter judgment against Clarity for:

a. Ms. Watson's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2);

c. Such other relief that this Court deems just and proper.

## COUNT VII
## CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681b(a)(3)

104.    Ms. Watson adopts and incorporates paragraphs 1 - 76 as if fully stated herein.

105.    Clarity violated **15 U.S.C. § 1681b(a)(3)** when it furnished at least one report to Plain Green and one report to Credit Ninja about Ms. Watson in response to a request for a report on unrelated individuals with different dates of birth, occupations, employers, and income information.

106.    Clarity had no reason to believe it had permissible purpose to furnish these reports as there are essentially no commonalities between the consumers whom Plain Green and Credit Ninja requested reports on and Ms. Watson.

107.    Clarity knows, through complaints from other consumers, that its automated systems often provide data about unrelated consumers in response to requests for reports by lenders.

108.    Clarity is thus liable to Ms. Watson, pursuant to 15 U.S.C. § 1681n, for the greater of Ms. Watson's actual damages and statutory damages of up to $1,000 for each occurrence, as well as for punitive damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Ms. Watson respectfully requests this Honorable Court enter judgment against Clarity for:

a.  The greater of Ms. Watson's actual damages or statutory damages of $1,000 per violation, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3);

c.  Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2); and,

d.  Such other relief that this Court deems just and proper.

**COUNT VIII**
**CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA,**
**15 U.S.C. § 1681b(a)(3)**
**(Pled in the Alternative to Count VII)**

109.  Ms. Watson adopts and incorporates paragraphs 1 - 76 as if fully stated herein, and pleads this count strictly in the alternative to Count VII.

110.  Clarity responded requests from Plain Green and Credit Ninja to provide reports on individuals not related to Ms. Watson, and Clarity responded to Plain Green and Credit Ninja by providing each of them a consumer report regarding Ms. Watson.

111.  Thus, Clarity negligently violated **15 U.S.C. § 1681b(a)(3)** when it furnished at least one report to Plain Green and at least one report to Credit Ninja about Ms. Watson in response to a request for a report on unrelated individuals with different dates of birth, occupations, employers, and income information.

112.  As such, Ms. Watson is entitled to her actual damages.

**WHEREFORE**, Ms. Watson respectfully requests this Honorable Court enter judgment against Clarity for:

    a. Ms. Watson's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

    b. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2);

    c. Such other relief that this Court deems just and proper.

## JURY TRIAL DEMANDED

Ms. Watson hereby demands a trial by jury on all issues so triable.

Respectfully submitted on April 9, 2026, by:

**SERAPH LEGAL, P. A.**

/s/ *Brandon D. Morgan*
Brandon D. Morgan, Esq.
Florida Bar Number: 1015954
BMorgan@SeraphLegal.com
3505 E. Frontage Rd., Suite 145
Tampa, FL 33607
Tel: 813-567-3434
Fax: 855-500-0705
*Counsel for Plaintiff*

## ATTACHED EXHIBIT LIST

A    Ms. Watson's Clarity Consumer Disclosure, April 1, 2026– Excerpts